EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CHECKSMART FINANCIAL, LLC,
Additional Parties Attachment Form is attached

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Mirasol J. Reyes

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

ENDORSED

2013 SEP 25  A 11: 58



David H. Yamasaki, Chief Executive Officer/Clerk
By J. CAO-NGUYEN
Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Santa Clara County Superior Court
191 N. First St., San Jose, CA 95113

**CASE NUMBER:**
*(Número del Caso):*
**113CV253627**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Caryn N. Fabian, 111 N. Market St., Suite 300, San Jose, CA 95113 408-625-1112

| DATE: *(Fecha)* | SEP 2 5 2013 | DAVID H. YAMASAKI Chief Executive Officer, Clerk | Clerk, by *(Secretario)* | J. CAO-NGUYEN | , Deputy *(Adjunto)* |
|---|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE:<br>Reyes v. Checksmart | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

California Check Cashing Stores, LLC,
Buckeye Check Cashing of California, LLC,
Cash1,
~~Community Choice Financial, and~~ *Community Choice Financial*
Does 1 through 10

Page __2__ of __2__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

ATTACHMENT CV-5012

# CIVIL LAWSUIT NOTICE

*Superior Court of California, County of Santa Clara*
*191 N. First St., San Jose, CA 95113*

CASE NUMBER: **113CV253627**

---

## PLEASE READ THIS ENTIRE FORM

---

*PLAINTIFF* (the person suing):  Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint*, *Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

*DEFENDANT* (The person sued):  You must do each of the following to protect your rights:

1. You must file a written response to the *Complaint, using the proper legal form or format,* in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail  a copy of your written response on the  Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

**Warning: If you, as the Defendant, do not follow these instructions,**
**you may automatically lose this case.**

---

*RULES AND FORMS:*  You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), www.scselfservice.org (Select "Civil") or from:

- State Rules and Judicial Council Forms:  www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms:  http://www.sccsuperiorcourt.org/civil/rule1toc.htm

---

*CASE MANAGEMENT CONFERENCE (CMC):*  You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC.  You may ask to appear by telephone – see Local Civil Rule 8.*

Your Case Management Judge is: Honorable Kevin McKenney          Department:     20

The 1st CMC is scheduled for: (Completed by Clerk of Court)

Date:     JAN 2 8 2014   Time: 2:15 PM  in Department: 20

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)

Date: _____ Time: _____ in Department:_____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):*  If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

---

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

# SANTA CLARA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

- ADR can save time. A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

- ADR can save money. Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

- ADR provides more participation. Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

- ADR provides more control and flexibility. Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- ADR can reduce stress. ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

Mediation is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

Neutral evaluation, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

-over-

Arbitration is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties and then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:
* The action is for personal injury, property damage, or breach of contract
* Only monetary damages are sought
* Witness testimony, under oath, needs to be evaluated
* An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

Civil Judge ADR allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:
* The parties have complex facts to review
* The case involves multiple parties and problems
* The courthouse surroundings would be helpful to the settlement process

Special masters and referees are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.
Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

Settlement conferences are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.
Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*

Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

Contact:

| Santa Clara County Superior Court | Santa Clara County DRPA |
|---|---|
| Coordinator | 408-792-2784 |
| ADR Administrator | |
| 408-882-2530 | |

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

CARYN N. FABIAN (SBN 93731)
Law Office of Caryn N. Fabian
111 North Market St., Suite 300
San Jose, California 95113

TELEPHONE NO.: 408-625-1112   FAX NO.: 408-625-1113

ATTORNEY FOR *(Name):* Plaintiff Mirasol J. Reyes

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Clara

STREET ADDRESS: 191 N. First St.

MAILING ADDRESS:

CITY AND ZIP CODE: San Jose, California 95113

BRANCH NAME:

**ENDORSED**

2013 SEP 25  A 11: 58

David H. Yamasaki, Chief Executive Officer/Clerk
Superior Court, Santa Clara, California

CASE NAME:
Mirasol J. Reyes v. Checksmart Financial, LLC, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:                        J. CAO-NGUYEN |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | **1 1 3 C V 2 5 3 6 2 7** |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☑ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☑ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):* 4
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 25, 2013

Caryn N. Fabian
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CARYN N. FABIAN (SBN 93731)
LAW OFFICE OF CARYN N. FABIAN
111 North Market St., Suite 300
San Jose, California  95113
Tel:  408-625-1112
Fax:  408-625-1113
E-Mail:  Fabian.Caryn@gmail.com

Attorney for Plaintiff Mirasol J. Reyes

ENDORSED

2013 SEP 25   A 11: 58

David H. Yamasaki, Chief of the Superior Court
By: **J. CAO-NGUYEN**
Deputy Clerk

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| MIRASOL J. REYES, | Case No.:  **113CV253627** |
| Plaintiff, | COMPALINT FOR DAMAGES FOR: |
| vs. | |
| CHECKSMART FINANCIAL, LLC, CALIFORNIA CHECK CASHING STORES, LLC, BUCKEYE CHECK CASHING OF CALIFORNIA LLC, CASH1, COMMUNITY CHOICE FINANCIAL, AND DOES 1 THROUGH 10, | 1. VIOLATION OF CALIFORNIA DEFERRED DEPOSIT TRANSACTION LAW;<br>2. VIOLATION OF CALIFORNIA LABOR CODES AND WAGE ORDER<br>3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW; and<br>4. CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY |
| Defendants. | |
| | REQUEST FOR JURY TRIAL |

Plaintiff Mirasol J. Reyes alleges as follows:

## FACTS COMMON TO ALL CAUSES OF ACTION

1. Plaintiff Mirasol J. Reyes was employed as a teller/supervisor selling Payday Loans at a store located at 2417 Alvin Ave., San Jose, California (hereinafter referred to as the "ALVIN STORE") from about 1989 to June 6, 2012.

1
Complaint for Damages

2. Defendant CHECKSMART FINANCIAL, LLC (hereinafter "CHECKSMART") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Delaware, doing business in the State of California, County of Santa Clara, and Plaintiff's employer from about January 2011 through the termination of her employment.

3. Defendant CALIFORNIA CHECK CASHING STORE, LLC (hereinafter "CCCS") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Delaware, doing business in the State of California, County of Santa Clara as a Payday Lender licensed by the California Department of Corporations.

4. CCCS operates the ALVIN STORE, where Plaintiff was employed, as well as a number of other CCCS stores in the State of California.

5. Defendant BUCKEYE CHECK CASHING OF CALIFORNIA, LLC, is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Delaware, and Plaintiff is informed and believes and based thereon alleges that Defendant BUCKEYE CHECK CASHING OF CALIFORNIA, LLC does business as Defendant CASH 1 in the State of California, County of Santa Clara.

6. Defendant CASH 1 operates many stores in the State of California, County of Santa Clara as a Payday Lender licensed by the California Department of Corporations.

7. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, Defendant COMMUNITY CHOICE FINANCIAL is a retailer of financial services to unbanked and underbanked consumers through retail storefronts, some of which are located in the State of California, County of Santa Clara, and is the parent company of Defendants CHECKSMART, CCCS, and CASH 1.

8. At all times material to this complaint, Defendant CHECKSMART employed the tellers, supervisors and managers working at CCCS and CASH 1, and the upper management positions were concurrently responsible for both CCCS and CASH 1 stores.

9. Plaintiff is presently unaware of the true names and capacities, whether individual, associate, corporate, or otherwise of Defendants Does 1 through 10, or any of them, and therefore sues such defendants by such fictitious names. Plaintiff will seek leave

to amend this Complaint to show the true names and capacities of such fictitiously named defendants when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for the acts, omissions, and events alleged herein, and has proximately caused damages and injury as herein alleged.

10. At all times material to this Complaint, each Defendant, whether named or fictitious, was the agent or employee of each and all of the other Defendants, and in doing the things alleged to have been done in the Complaint, acted within the scope of such agency or employment, or ratified the acts of the other.

11. At all times material to this complaint, Defendants CHECKSMART, CCCS, and BUCKEYE CHECK CASHING OF CALIFORNIA, LLC, were registered with the California Secretary of State, with the same Entity Address and Agent for Service of Process being:

> Address:  7001 Post Rd., Suite 200, Dublin, Ohio 43016
> Agent for Service of Process:  Corporation Service Company which will do Business in California

12. Plaintiff is informed and believes and thereon alleges that there exists such a unity of interest and ownership between named Defendants that the individuality and separateness of said Defendants has ceased to exist.  The business affairs of said Defendants at all relevant times were and are so mixed and intermingled, as is more particularly alleged below, that the same cannot reasonably be segregated, and the same are in inextricable confusion.  Accordingly, the fiction of their separate existence must be disregarded.

13. A Payday Loan, also referred to as a Deferred Deposit Transaction, is a transaction whereby a Payday Lender defers depositing a customer's personal check until a specified date, pursuant to a written agreement, as provided by the California Deferred Deposit Transaction Law, California Financial Code Sections 23000 et seq. (hereinafter referred to as "CDDTL").

14. In order to promote the public policy of discouraging such loans, except when absolutely necessary, because of the cycle of debt they tend to create which is expensive and difficult to recover from, Payday Lenders must be licensed by the

California Department of Corporations, must provide annual reports to and be open for inspection by the Department of Corporations, and are subject to strict regulations as set forth in the CDDTL, all established to promote consumers to borrow only as much as one can afford to pay back in full on their next payday.

15. Shortly after Defendant CHECKSMART became Plaintiff's employer at the ALVIN STORE, it began requiring Plaintiff, then a supervisor at the store, to work through meal and rest periods and to complete numerous reports after clocking out at the end of her workday, and to engage in conduct, and to train the tellers to engage in conduct, which Plaintiff later learned was unlawful, unethical, and against the public policy of the State of California.

16. From about June, 2011, Plaintiff, as supervisor of the Payday Lending at the ALVIN STORE, was required to engage in the following conduct, and to train and assure the tellers did the same:

    a. Offer the "Manager's Special" to customers unable to timely pay off their Payday Loan, which allowed the customer to pay off all or a portion of one deferred deposit transaction with the proceeds of another, which as more particularly described in the First Cause of Action, is prohibited by the CDDTL.

    b. Make a Payday Loan from CCCS, with knowledge the customer had an existing Payday Loan with CASH 1, as more particularly described in the First Cause of Action, is also prohibited by CDDTL.

    c. Encourage all payday loan customers to borrow the maximum amount permitted by law, which is $300.00 per Payday Loan, and encourage those customers who did not initially borrow the maximum amount, to "Bump Up" the amount to $300, which is contrary to the spirit of the law and the consumer advisory issued by the Department of Corporations.

    d. To cross-sell products, encouraging customers for other products (money orders, Western Union, prepaid debit/credit cards, . . . ) to purchase a Payday Loans, which is contrary to the spirit of the law and the consumer advisory issued by the Department of Corporations.

17. From about October 2011, Plaintiff as supervisor of the Payday Lending at the ALVIN STORE, was required to complete the following reports before leaving the store each day worked:

    a. Bump Up Logs, which show the dates of transactions, borrowers' names, previous loan amounts, bumped up loan amounts and tellers who helped them;

    b. Stack Percentage Reports, which showed the total number of loans due for the day, the total number of borrowers who came to pay, the number of loans left unpaid for the day, and the number of Bump Ups; the Stack Percentage was calculated by dividing the total amount of $300 loans by the total amount of outstanding loans;

    c. PRA Fee Comparisons, which calculate daily, monthly and yearly the percentage decrease or increase in fees collected; and

    d. New Payday Loan Customers, which included the customers' names, amounts borrowed, dates of transactions, and the tellers who helped them.

18. The employees' and store's success was measured by the Stack Percentage, and Defendants reprimanded and threatened involuntary termination to store employees when the numbers were not sufficient.

19. Plaintiff's duties as supervisor of the ALVIN STORE included training and overseeing the other tellers, and acting as a teller when necessary, along with completing the required daily reports.

20. Although Plaintiff was a supervisor of the ALVIN STORE, she was required to perform nonexempt duties for more than fifty percent (50%) of her working hours, and was therefore paid as a nonexempt employee.

21. Plaintiff was required to clock in and out during her assigned hours, and paid all wages for the assigned hours, but she was further required to work beyond her assigned hours in order to complete the required daily reports, and refused compensation for such overtime.

22. Defendants did not make provisions for Plaintiff to be provided the required meal and rest periods, and in order to train, be available to answer questions, and to

cover for the other tellers, Plaintiff was not able to take all required meal and rest periods each day.

23. When Plaintiff expressed her concerns about the reports required, the hours and overtime she was required to work, and the sales of the Payday Loans to her manager, he referred to her as a "troublemaker."

24. In May 2012, in preparation for a Department of Corporation's investigation, Plaintiff's manager instructed her that if asked by an investigator about the Manager's Special, she was to respond simply that it was a waiver of the $15 bounced check fee, and she was to instruct the other tellers to respond in the same manner.

25. In May 2012, in preparation for a Department of Corporations investigation, Plaintiff further personally saw that all notes referring to the Manager's Special were whited out in the Debtor's Binder.

26. Defendants' conduct in preparation of the Department of Corporation's investigation caused Plaintiff to research the legality of Defendants' conduct and she subsequently learned certain of Defendants' conduct was unlawful, unethical, and against the public policy of the State of California.

27. After the Department of Corporation's investigation and Plaintiff's learning that the Manager's Special was in violation of the CDDTL, Plaintiff thought that such action would cease, but Plaintiff was again instructed to offer the "Manager's Special" to customers, and became very distraught about continuing to engage in illegal activity, and encouraging the other tellers and consumers to do the same.

28. Plaintiff believed it to be futile to again complain about the working conditions, as she had been referred to as a trouble maker in the past and informed Defendants' actions were legal. She was also frightened she would be fired or harassed beyond what she could tolerate if she complained and continued working for Defendants.

29. Being unable to tolerate engaging in the illegal activity required of her in the performance of her duties, and being unable to continue working the long hours without breaks required of her without proper compensation, on June 6, 2012, Plaintiff submitted her resignation, effective immediately.

### FIRST CAUSE OF ACTION
## VIOLATION OF CALIFORNIA DEFERRED DEPOSIT TRANSACTION LAW
### (Against All Defendants)

30. Plaintiff incorporates each allegation set forth in paragraphs 1 through 29 herein.

31. At all times mentioned herein, DEFENDANTS, as Payday Lenders, were subject to the California Deferred Deposit Transaction Law, California Financial Code Sections 23000 et seq. (hereinafter referred to as "CDDTL").

32. Defendants' alteration of the Debtor's Binder in preparation of the Department of Corporations' inspection, by whiting out notes referring to the Manager's Special, personally seen by Plaintiff during her employment with Defendants, is a violation of Financial Code Section 23015(a) which provides "It is unlawful for any person to knowingly alter, destroy, mutilate, conceal, cover up, falsify, or make a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the administration or enforcement of any provision of this division."

33. The Manager's Special, which during the course of her employment with Defendants, Plaintiff was required to encourage the customers to use, and encourage the tellers to offer the same, is prohibited by Financial Code Sections 23036(c) and 23037(a).

34. The Manager's Special allowed one unable to pay off a loan to provide another check for the amount, a new loan fee was charged, and the proceeds from the new loan were used to pay off the old loan, with no money being given to the customer, but the customer incurring an additional Payday Loan fee; if there was a bounced check fee, it was waived to make it work.

35. The Manager's Special is in violation of Financial Code Section 23037(a) which provides in pertinent part that a licensee shall not ". . . permit a customer to pay off all or a portion of one deferred deposit transaction with the proceeds of another."

36. The Manager's Special is further in violation of Financial Code Section 23036(c), which provides that "A licensee shall not enter into an agreement for a deferred deposit transaction with a customer during the period of time that an earlier written agreement for a deferred deposit transaction for the same customer is in effect" in that the initial Payday Loan is not complete before the subsequent Payday Loan is

7

transacted, and therefore, the consumer is considered to have simultaneous loans for a period of time.

37. Defendants are further in violation of Financial Code Section 23036(c) in providing Payday Loans by CCCS with knowledge (via Defendants' LOOK UP system) that the customer has a Payday Loan from CASH 1, which Plaintiff was required to do, and to encourage the tellers to do, during the course of her employ with Defendants.

38. Defendants' conduct is further in violation of Financial Code Section 23037(f) which provides that a licensee is not permitted to "Engage in any unfair, unlawful, or deceptive conduct, or make any statement that is likely to mislead in connection with the business of deferred deposit transactions."

39. At all times herein mentioned, Defendants' conduct was deliberate, intentional and willful, and designed to attempt to circumvent the laws of the State of California.

40. On June 6, 2012, after learning the extent of Defendants' illegal activities, and refusing to continue to engage in such illegal activities, and being unable to remedy the situation without subjecting herself to great stress and anticipated harassment, Plaintiff resigned her employment, effectively immediately, and has suffered lost wages and employment benefits since the termination of her employment.

41. Pursuant to Financial Code Section 23064, any person injured by any violation of the CDDTL may bring an action for the recovery of damages, an equity proceeding to restrain and enjoin the violations, or both, and the amount awarded may be up to three times the damages actually incurred.

42. Financial Code Section 23064 further provides that if the Plaintiff prevails, Plaintiff shall be awarded reasonable attorney's fees and costs.

43. Financial Code Section 23064 further provides that if a court determines by clear and convincing evidence that a breach or violation was willful, the court, in its discretion, may further award punitive damages.

44. Financial Code Section 23064 further provides that the court may also grant any equitable relief that it deems proper, including restitution and disgorgement.

     WHEREFORE, Plaintiff requests relief as hereinafter provided.

## SECOND CAUSE OF ACTION

## VIOLATION OF CALIFORNIA LABOR CODES AND WAGE ORDER

## (Against Defendant CHECKSMART)

45. Plaintiff incorporates each allegation set forth in paragraphs 1 through 44 herein.

46. At all times mentioned herein, CHECKSMART was an employer subject to California Labor Code Sections 200 et seq. and Industrial Welfare Commission Wage Order No. 4-2001.

47. At the time of termination of Plaintiff's employment, she was earning $19.14 per hour.

48. From about October 2011 to the termination of her employment, Plaintiff was required to work approximately one (1) hour each day after clocking out, beyond her regular eight (8) hour shift, to complete the required daily reports, before leaving work for the day.

49. Plaintiff requested compensation for the time spent completing the reports, but was refused the compensation; Plaintiff's supervisor was aware she was working after clocking out, but insisted she clocked out at the end of her assigned shift and then complete the reports.

50. Plaintiff worked approximately 180 hours overtime for which, despite demand, she has not received any compensation.

51. Defendant failed to make provisions for, and Plaintiff was not able to take, an uninterrupted meal break of at least thirty (30) minutes when working more than 5 hours per day, and pursuant to the Wage Order, is therefore due one (1) hour pay for each day she was unable to take a meal break.

52. Defendant failed to make provisions for, and Plaintiff was not able to take, two (2) uninterrupted rest breaks each day she worked a full eight (8) hours, and pursuant to the Wage Order, is therefore due one (1) hour pay for each day she was unable to take both rest breaks.

53. Pursuant to the Wage Order, Plaintiff is therefore due approximately $5,167.80 in overtime wages (Overtime pay of $28.71 x 180 hours), the exact amount to be determined at the time of trial.

54. Pursuant to the Wage Order, Plaintiff is further due approximately $3,445.20 for missed meal periods ($19.14 x 180 days), the exact amount to be determined at the time of trial.

55. Pursuant to the Wage Order, Plaintiff is further due approximately $3,445.20 for missed rest periods ($19.14x 180 days), the exact amount to be determined at the time of trial.

56. Pursuant to Labor Code Section 1194.2, Plaintiff is further entitled to liquidated damages in the approximate amount of $2,160.00 ($12.00 x 180), the exact amount to be determined at the time of trial.

57. Defendants' failure to pay Plaintiff overtime was willful and without a good faith dispute, subjecting Defendants to the penalty provided by Labor Code Section 203 which provides that an employee's wages will continue as a penalty until paid, up to 30 days from the time wages were due.

58. Pursuant to Labor Code Section 203, Plaintiff is entitled to a penalty in the amount of $4,593.60 ($153.12 per day x 30 days).

59. Pursuant to Labor Code Sections 218.5 , 218.6, and 1194.2, Plaintiff is further entitled to interest on the unpaid wages from the date that the wages were due, and reasonable attorneys' fees and costs incurred by Plaintiff in this action.

WHEREFORE, Plaintiff requests relief as hereinafter provided.

## THIRD CAUSE OF ACTION
## VIOLATION OF UNFAIR COMPETITION LAW
### (Against all Defendants)

60. Plaintiff incorporates each allegation set forth in paragraphs 1 through 59 herein.

61. Pursuant to California Business and Professions Section 17200, unfair competition under the Unfair Practices Act shall include any unlawful, unfair or fraudulent business act or practice.

62. At all times material to this complaint, Defendants' standard policy was to permit, encourage, and/or require its nonexempt employees to work beyond their assigned shifts without compensation in violation of the Labor Code.

63. At all times material to this complaint, Defendants' did not provide for, nor encourage all nonexempt employees to take meal and rest breaks in violation of the Labor Code and applicable Wage Order.

64. Defendants' violations of the Labor Code and Wage Order, as more particularly described in the Second Cause of Action, constitute unfair and unlawful practices under Business and Professions Code Section 17200 et seq.

65. At all times material to this complaint, Defendants promoted and transacted Payday Loans in violation of the CDDTL, as more particularly described in the First Cause of Action.

66. Defendants' violations of the CDDTL constitute unfair and unlawful business practices under Business and Professions Code Section 17200 et seq.

67. Defendants' consistent violations of the Labor Code, Wage Order and CDDTL as described herein constitutes business practices because they were done repeatedly over a significant period of time and in a systematic manner to the detriment of Plaintiff, all persons similarly situated, and consumers of Payday Loans from Defendants, and gave to them an unfair advantage over other businesses who complied with the laws.

68. Defendants knew, or in the exercise of reasonable care, should have known that its conduct regarding employees' wages, meal and rest periods, using proceeds from one Payday Loan to pay off another, and making Payday Loans to customers with knowledge that they already had a Payday Loan violated the Labor Code, applicable Wage Order, CDDTL, and further constitute unfair and unlawful business practices under Business and Professions Code Section 17200 et seq..

69. Business and Professions Code Section 17203 provides that any court of competent jurisdiction may make such orders or judgments as may be necessary to prevent the use of any practice which constitutes unfair competition, including injunctive relief.

70. As a proximate result of the above mentioned acts of Defendants, Plaintiff has suffered unpaid wages, lost income and employment benefits, and Defendants have unfairly generated additional income.

71. As a proximate result of the above mentioned acts of Defendants, other employees have also suffered unpaid wages, missed meal and rest periods, and are being required to engage in illegal activity, and unless restrained by this Court, Defendants will continue to engage in the unlawful conduct as alleged above.

72. As a proximate result of the above mentioned acts of Defendants, consumers have been induced to purchase illegal and unethical payday loans, and unless restrained by this Court, Defendants will continue to engage in the unlawful conduct as alleged above.

WHEREFORE, Plaintiff requests relief as hereinafter provided.

## FOURTH CAUSE OF ACTION

## CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY

### (Against CHECKSMART)

73. Plaintiff incorporates each allegation set forth in paragraphs 1 through 72 herein.

74. While employed by Defendant CHECKSMART, Defendants unlawfully required Plaintiff to work overtime without pay and to work through meal and rest breaks.

75. While employed by Defendant CHECKSMART, Defendants further unlawfully required Plaintiff to violate the CDDTL by encouraging customers to pay off one Payday Loan with proceeds from another and to sell another Payday Loan to customers with knowledge they had an existing Payday Loan, and as a supervisor, Plaintiff was required to train and encourage the other tellers to do the same.

76. While employed by Defendant CHECKSMART, Defendants further required Plaintiff to engage in unethical conduct, contrary to the spirit of the Payday Loan laws and regulations by encouraging the purchase of Payday Loans in the maximum amount of $300, to cross sell and Bump Up, and to train and encourage the other tellers to do the same.

77. The Labor Codes set forth the public policy of the State of California to provide fair compensation and working conditions for employees.

78. The purpose of the CDDTL is to regulate and limit the use of Payday Loans in furtherance of the public policy of the State of California that such loans only be

used when absolutely necessary, and in the minimum amount, to avoid the cycle of debt they tend to create.

79. Defendants' conduct in violation of the Labor Code, Wage Order, and CDDTL was intentional and for the purpose of providing a financial benefit to Defendants.

80. When Plaintiff became aware of the extent of the illegality of her working conditions, and the conduct that she was required to engage in, and encourage both other tellers and consumers to engage in, it become intolerable for her to continue her employment with Defendants.

81. A reasonable employer would realize the intolerable conditions the unlawful conduct, and the pressure to increase the numbers by way of unlawful conduct created.

82. A reasonable person in the employee's position would not have been able to tolerate the working conditions Plaintiff was subjected to, and would have felt compelled to resign, as Plaintiff did.

83. Defendants had actual knowledge of the existence of these intolerable conditions, yet refused to remedy them.

84. As a direct and proximate result of defendants' wrongful acts, Plaintiff terminated her employment with Defendant CHECKSMART, and despite her efforts, has been unable to obtain comparable employment since, suffering lost wages of approximately $766 per week and other employment benefits, the exact amount of which will be provided at trial, but is in excess of the jurisdictional limits of this Court.

85. Defendants' actions were deliberate and Defendants are guilty of oppression, fraud and/or malice, justifying an award of exemplary and punitive damages.

WHEREFORE, Plaintiff requests relief as hereinafter provided.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a trial by jury.

## PRAYER FOR RELIEF

1. For general and compensatory damages according to proof;

2. For unpaid wages;

3. For Labor Code penalties and liquidated damages;

13
Complaint for Damages

## VERIFICATION

I, Mirasol J. Reyes, am Plaintiff in the above-referenced action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under perjury that the foregoing is true and correct.

Executed on September ⟨09⟩, 2013, at San Jose, California.

Mirasol J. Reyes